SUAREZ, J.
Elsa Chacon ("Chacon"), as the Personal Representative of the Estate of her husband Robiel Chacon, brought a wrongful death action against Philip Morris.[1] Chacon brings this appeal from an adverse final judgment in favor of Philip Morris. This appeal presents a legal issue of first impression for the Engle line of tobacco cases, which issue is the proper interpretation of the phrase "[a]ll Florida citizens and residents" as used in R.J. Reynolds Tobacco Co. v. Engle, 672 So.2d 39, 40 (Fla. 3d DCA 1996) (hereinafter " Engle I"), to initially define the members of the Engle class.
In her Complaint below, Chacon alleged Mr. Chacon qualified as an Engle class member as defined in Engle v. Liggett Group, Inc., 945 So.2d 1246, 1256 (Fla. 2006) (hereinafter " Engle III") (citing Engle I, 672 So.2d at 40, 42 ) and that as such, Philip Morris was responsible for his death under multiple theories of liability.[2] Philip *1174 Morris argued Mr. Chacon did not qualify as an Engle class member and therefore the suit could not be maintained. The dispositive issue at trial, and here on appeal, is whether to initially qualify as an Engle class member Chacon was required to prove that Mr. Chacon was both a citizen and a resident of Florida at the time his smoking-related disease was manifested or diagnosed, or was only required to prove that Mr. Chacon was either a citizen of Florida or a resident of Florida at the relevant time.
We hold that, in order to initially qualify as an Engle class member, a plaintiff must prove that the deceased was either a citizen of Florida or a resident of Florida at the time of manifestation or diagnosis. We therefore reverse and remand for a new trial, finding the trial court erred by instructing the jury that, as an initial requirement to qualify as a member of the Engle class, Chacon was required to prove that Robiel Chacon was both a citizen and a resident of Florida. Additionally, we affirm on Philip Morris's cross-appeal as we find the trial court gave the correct jury instructions defining the terms "citizen" and "resident."
The main issue in this appeal, which was hotly contested below, is the question of the proper interpretation of the initial phrase in the definition of Engle class membership. The Engle class is defined as: "[a]ll Florida citizens and residents, and their survivors, who have suffered, presently suffer or have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine." Engle I, 672 So.2d at 42. Philip Morris contended at trial and now on appeal that this language required Chacon to initially prove that Mr. Chacon was both a citizen and a resident of Florida. Chacon argues that the phrase "all Florida citizens and residents" required her to only prove that Mr. Chacon was either a citizen or resident of Florida. At the charge conference, the trial court denied Chacon's renewed request to provide the jury with the either/or wording (either a citizen or a resident), and over Chacon's objection the trial court accepted Philip Morris's proposed jury instruction requiring Chacon to prove that the deceased was both a Florida citizen and a Florida resident as an initial requirement for Engle class membership.[3] The trial court also instructed the jury on the meaning of the term "citizen" and the term "resident," and gave the jury a list of factors it could consider in determining whether Mr. Chacon met the definition of a "citizen" and the definition of a "resident" of Florida. Consequently, in answer to the verdict form question, "[w]as Robiel Chacon a citizen and resident of Florida when his lung cancer was diagnosed on June 3, 1994, or when his lung cancer first manifested," the jury answered "no." By answering in the negative, the jury concluded that the deceased was not both a Florida citizen and a Florida resident, and *1175 thus the jury did not proceed further to consider any of the remaining Engle class membership requirements, i.e., when the disease manifested or was diagnosed, and whether that manifestation or diagnosis occurred prior to the Engle class membership cutoff date of November 21, 1996.[4]
Generally, a trial court's rulings on jury instructions are reviewed for abuse of discretion. See St. Paul Mercury Ins. Co. v. Coconut Grove Bank, 106 So.3d 452 (Fla. 3d DCA 2009). Where, however, as here, the analysis turns on a pure question of law, our standard of review is de novo. See Bosem v. Musa Holdings, Inc., 46 So.3d 42, 44 (Fla. 2010) (stating that pure issues of law are reviewed de novo); Philip J. Padovano, Florida Appellate Practice § 19:2 at 358 n. 5 (2013 ed.).
The language in Engle"all Florida citizens and residents" is the preamble to the actual qualifications for class membership. See Engle III, 945 So.2d at 1274 ; Engle I, 672 So.2d at 42. No case in Florida has specifically addressed the singular issue presented here, whether the "all [Florida] citizens and residents, and their survivors" language of Engle must be interpreted to require a plaintiff to prove that the deceased was both a citizen and a resident of Florida at the pertinent time, or be interpreted to require a plaintiff to prove only that the deceased was either a citizen of Florida or a resident of Florida at the pertinent time. Based on our analysis, we find that the proper interpretation requires a plaintiff to prove only that the deceased was either a citizen of Florida or a resident of Florida at the time the smoking-related disease manifested or was diagnosed.[5]
Our analysis of the phrase "all Florida citizens and residents" turns on the use of the single word "and" in that phrase. Authorities agree that the word "and" can be used in the several sense (A and B, jointly or severally) or in the joint sense (A and B, jointly but not severally).[6] If it is used in the several sense, as argued by Chacon, then it must be proven that the deceased was either a citizen of Florida or a resident of Florida at the time his disease manifested or was diagnosed. If used in the joint sense, as argued by Philip Morris, then it must be proven that the deceased was both a citizen of Florida and a resident of Florida at the time his smoking-related disease manifested or was diagnosed.
Professor Reed Dickerson, in The Difficult Choice Between "And" and "Or" explains the several use of "and" as follows:
Observation of legal usage suggests that in most cases "or" is used in the inclusive rather than the exclusive sense, while "and" is used in the several rather than the joint sense .... This does not say that "and" means "or". It says that whether you use "and" or "or" in such a case depends upon whether you identify the affected persons by enumerating the several classes into which they may fall or by enumerating their qualifying characteristics.
46 A.B.A.J. 310, 311 (1960), reprinted in Articles by Maurer Faculty. Paper 1496. http://www.repository.law.indiana.edu/facpub/1496 (footnote omitted). Although the concept is subtle, the words "citizens" and "residents" as used in the phrase "all Florida citizens and residents" clearly *1176 identify those classes of persons in Florida who can initially be included in the Engle class. Therefore, from a legal writing standpoint the "and" as used in the phrase "all Florida citizens and residents" enumerates the two separate classes of persons-citizens and residents-each of which is included in the Engle class. See id.
In addition, the adjectives "all" and "Florida" modify the nouns "citizens" and "residents," so that the phrase is to be read as "all Florida citizens," and "all Florida residents"-one can be a citizen, a resident, or both. See Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 121 (West 2012) (explaining the series-qualifier canon). If the phrase was intended to be read in the joint sense, it would have been written that way, i.e., "All Florida citizens who are also residents ..." See id. at 121.
Keeping this in mind, we now turn to the use of the phrase as found in many of the Florida Engle progeny cases, particularly those cited by both parties in their briefs. The issue in most of those cases concerned the manifestation or diagnosis timing element of Engle class membership and not the discrete interpretation of the phrase "all Florida citizens and residents." We turn to these and other cases solely for guidance to see whether those courts treated the word "and" in the phrase "all Florida citizens and residents" as joint (and) or several (or). It is interesting to note that in the context of each of the cases cited, the various district courts of appeal use the word "and" interchangeably with the word "or," showing an understanding that the interpretation of the phrase is several (the deceased is either a citizen or a resident) and not joint (the deceased is both a citizen and a resident).
In Rearick v. R.J. Reynolds Tobacco Co., 68 So.3d 944, 945 (Fla. 3d DCA 2011), the qualification for membership in the Engle class "requires plaintiff to show that the decedent was a resident of the state of Florida at the time of a 'medical diagnosis' of a smoking-related disease or at the time evidence of the causal relationship of the cause of action had [otherwise] manifested itself."[7] (citing Engle III, 945 So.2d at 1274 ). The Rearick Court determined that the decedent was "not a Florida citizen or resident when she was diagnosed," and that there was no record that her lung cancer manifested "while a resident of Florida." Id. at 945-46 (emphasis added). There is no discussion or suggestion in Rearick that the decedent also had to be a Florida citizen, or whether, in fact, she ever was one. Rearick is a case about the timing of the manifestation of the disease and where the deceased was residing at the time (Illinois or Florida). The discussion in Rearick concludes with "not a Florida citizen or resident." Id. at 945 (emphasis added).
In Bishop v. R.J. Reynolds Tobacco Co., 96 So.3d 464, 468 (Fla. 5th DCA 2012), the court held, "[w]e believe it necessarily follows that inclusion in the Engle class requires Florida residence or citizenship when the disease or condition first manifests itself, not at the time of death." (citing Rearick, 68 So.3d at 945 ) (emphasis added). Bishop, too, is a case about the timing of manifestation and diagnosis, but in discussing the Engle class requirement, the decision uses the word "or" and not *1177 the word "and." In Damianakis v. Philip Morris USA, Inc., 155 So.3d 453, 467-68 (Fla. 2d DCA 2015), the court concluded, "[a]s long as an individual was a citizen or resident of Florida as of the cutoff date of November 21, 1996" and manifested the smoking related illness on or before that date, then "he or she satisfies the residency and citizenship requirement of Engle class membership." (emphasis added). Further, that court noted,
However, we disagree with the suggestions contained in both of these opinions that in order to qualify as an Engle class plaintiff, a claimant must have been a citizen or resident of Florida at the time his or her smoking-related illness manifested itself. Without a doubt, an individual cannot be a member of the Engle class if his or her smoking-related illness first manifested after November 21, 1996 (the cut-off date), regardless of whether that person was a Florida resident at the time. However, it does not follow that because a person's smoking-related illness first manifested before that person became a Florida resident, he or she is excluded from the class. On the contrary, the only requirements for membership in the Engle class are that (1) the individual's smoking-related illness manifested before the cut-off date, (2) he or she was a resident or citizen of Florida on or before the cut-off date, and (3) the individual's smoking-related illness resulted from the individual's addiction to cigarettes containing nicotine.
Id. at 462 (emphasis added). Once again, this case is more about the timing of the disease manifestation. See also R.J. Reynolds Tobacco Co. v. Ciccone, 190 So.3d 1028, 1040 (Fla. 2016) ("There remain numerous limitations on the scope of the class, including the statute of limitations, the one-year time bar set forth by this Court for filing an individual action based on Engle, Florida residency, and the requirement we address here that the smoker 'ha[d] suffered' or be 'presently suffering' from a tobacco-related disease or medical condition at the time the class was recertified by the trial court.") (emphasis added); Lorillard Tobacco Co. v. Mrozek, 106 So.3d 479, 481 (Fla. 1st DCA 2012) ("Ms. Miller, a Florida resident, began smoking in the 1940s and continued smoking until her death in December 1994. She was addicted to the nicotine in the cigarettes she smoked. From these facts, the trial court determined that Ms. Miller-and thus, Mrozek-satisfied the Engle class definition, and that there remained no disputed factual issues to send to the jury.") (emphasis added).
The conclusion we reach after closely examining both the use of legal language and the Engle progeny cases is that the trial court in this litigation incorrectly interpreted the Engle class definition as requiring proof of both citizenship and residency. The case law in Florida demonstrates the prefatory phrase "all citizens and residents" is to be read to allow access to Engle class membership to those who can establish either status - those who were Florida residents on the one hand, or those who were Florida citizens, on the other. Satisfying either Florida citizenship or Florida residency is sufficient to allow a plaintiff to then proceed to prove the timing of the manifestation or diagnosis of the smoking-related illness in relation to the Engle class membership cutoff date of November 21, 1996.
For these reasons we reverse the Final Judgment below and remand for a new trial in which Elsa Chacon will be allowed to prove that Mr. Chacon was either a citizen or a resident of the State of Florida within the "manifestation or diagnosis" timeframe established by Engle, with the jury to be instructed accordingly.
*1178 Because we are reversing and remanding for a new trial, we address Philip Morris's cross-appeal of the trial court's instructions to the jury regarding the definitions of residency and citizenship. The trial court, over Philip Morris's objection, instructed the jury that the definition of "residence" is, "[a]ny place of abode or dwelling place constitutes a 'residence,' however temporary it may be." Philip Morris objected to the "however temporary" language, contending that the proper standard to determine residency is "legal residency." Philip Morris contends that a person is a "legal resident" if he or she lives in a place and has no present intention of leaving. See Maldonado v. Allstate Ins. Co., 789 So.2d 464, 467 (Fla. 2nd DCA 2001). The Maldonado case upon which Philip Morris takes its main argument, however, further explained,
"Any place of abode or dwelling place constitutes a 'residence,' however temporary it may be, while the term 'domicile' relates rather to the legal residence of a person, or his home in contemplation of law. As a result, one may be a resident of one jurisdiction although having a domicile in another." Further, "residency" can allow for temporary "residence" in an "abode," as compared to a home.
Although domicile and residency are often used interchangeably, they are different legal concepts. A "domicile" is a person's home. A person has a domicile at all times. In some contexts, the phrase "legal residency" may be used in lieu of "domicile."
"Citizenship," on the other hand, is a more clearly defined concept for purposes of one's status and membership in the United States of America. Citizenship implies membership in a community from which one receives a grant of certain political rights and privileges and is often based upon one's connection to the jurisdiction by birth or naturalization. In the context of citizenship in Florida or any other state, the term is often comparable to domicile or legal residence. Residency is not equivalent to citizenship, and the relationship between one's national citizenship and one's residency is tenuous at best.
Id. at 467-68 (citations omitted, emphasis added). Being a "resident" for Engle class membership purposes has a different meaning from "legal resident" or "domicile" - terms that typically arise out of a statutory context - and we decline to equate the two terms. We conclude that the trial court properly instructed the jury regarding the distinction between "resident" and "citizen," and affirm on Philip Morris's cross-appeal.
Appeal reversed and remanded; the issue on cross-appeal is affirmed.

The Appellant's husband, Robiel Chacon, died from lung cancer after years of smoking Philip Morris cigarettes. Mr. Chacon was born in Cuba. He started smoking when he was eleven or twelve years old. In 1958, when Mr. Chacon was eighteen or nineteen, he left Cuba and moved to New York. Soon after Mr. Chacon arrived in New York, he began smoking Marlboro, a Philip Morris brand, eventually smoking up to three or four packs a day. In 1987, before the Chacons moved to Miami, Mr. Chacon leased a warehouse and storefront in Hialeah so he could start a new clothing business there. In 1988, the Chacons moved to Miami. They filed for a homestead exemption in Miami-Dade County, registered their car and paid for car insurance there, had their mail delivered to their Miami home, paid for utilities in Miami, and opened bank accounts in Miami. Their children attended Miami-Dade County schools. The Chacons did not keep any residence in New York. Although Mr. Chacon still owned his clothing store in New York, his sister-in-law ran it. Mr. Chacon would periodically return to New York to check on the store and purchase merchandise at auctions to restock it. He also kept his New York driver's license as that made it easier to rent vehicles to transport stock for the New York store. Mr. Chacon was registered to vote in New York, and did not register to vote in Miami-Dade County. In 1994, Mr. Chacon was diagnosed with lung cancer. At that time, he closed the New York store and obtained a Florida driver's license. He passed away in February, 1996.

For a history of the class action, see R.J. Reynolds Tobacco Co. v. Brown, 70 So.3d 707, 709 (Fla. 4th DCA 2011).

Chacon had proposed this instruction on Engle class membership:
The first issue for your determination is whether Robiel Chacon was a member of the Engle class. For Robiel Chacon to have been a member of the Engle class, Plaintiff Elsa Chacon must prove by the greater weight of the evidence that: ... (2) Robiel Chacon's lung cancer first manifested itself on or before November 21, 1996; and (3) Robiel Chacon was a citizen or resident of Florida on or before November 21, 1996.
The trial court instead gave this instruction:
The first issue for your determination is whether Robiel Chacon was a member of the Engle class. To prove that Mr. Chacon was a member of the Engle class, you must determine (1) whether Mr. Chacon was a citizen and resident of Florida when his lung cancer was diagnosed on June 3, 1994, or when his lung cancer first manifested ....

Engle III, 945 So.2d 1246, 1275 (Fla. 2006) (holding the cut-off date for class membership is November, 21, 1996).

See discussion, infra, regarding the timing issues not on appeal here.

Bryan A. Garner, A Dictionary of Modern Legal Usage 624 (2d ed. 1995) (providing that the meaning of the word 'and' can have a several meaning (citing Scott J. Burnham, The Contract Drafting Guidebook 163 (1992) ) ).

The parties agreed pre-trial that Rearick was binding law as to the timing issue, and preserved their arguments that Rearick was wrongly decided. The parties ask this Court on appeal to "reconsider" Rearick's holding on the timing issue. This issue is not before us, however, because the jury's determination that the deceased was not a citizen and resident of Florida precluded further consideration of the "manifestation" or "diagnosis" issue in relation to the Engle class cutoff date.