PRO, District Judge,
dissenting in part
and concurring in part:
I concur in the judgment remanding this case to the district court, and I agree the magistrate judge abused his discretion when he approved the Settlement Agreement as fair, reasonable, and adequate as required by Federal Rule of Civil Procedure 23(e)(2). I write separately, however, because I would hold that unnamed class members become “parties” upon class certification whose consent is required under 28 U.S.C. § 636(c)(1) for a magistrate judge to exercise jurisdiction. As a result, I would hold this Court likewise lacks jurisdiction under § 636(c)(1). Accordingly, I would vacate for lack of jurisdiction the magistrate judge’s Order approving the class action settlement and remand for further proceedings.
I.
Among the most important requirements in federal class actions are that the unnamed class members bound by the judgment must be properly noticed and certified by a court of competent jurisdiction, and that any settlement be properly approved by the court as “fair, reasonable, and adequate.” Fed.R.Civ.P. 23(e)(l)-(2). In this case, we are asked to decide whether the magistrate judge, acting pursuant to consent jurisdiction under § 636(c)(1), properly approved a class action settlement agreement as fair, adequate, and reasonable. However, because our jurisdiction to review this case is dependent on the magistrate judge’s jurisdiction, before we can consider whether the magistrate judge properly approved the class action settlement in this case, we must be satisfied that the magistrate judge had jurisdiction under § 636(c)(1) to approve the settlement.
Under § 636(c)(1), a magistrate judge may exercise jurisdiction over a case in which a district court has jurisdiction “[ujpon the consent of the parties” and upon special designation by the district court. In this class action, named plaintiff Miranda Day (“Day”) brought suit on behalf of herself and a putative class of 10,-000 Florida consumers who had contracted for debt settlement services with Defendants/Appellees Ruther & Associates, Per- *1329 seis & Associates, Neil J. Ruther, Jimmy B. Persels, Robyn R. Freedman (collectively, the “Law Firm Defendants”), Car-eOne Services In., f/k/a FreedomPoint, Inc. (“CareOne”), and other defendants including Ascend One Corp., 3C Inc., and Bernaldo Dancel. The district court had jurisdiction over the case pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), as well as federal question jurisdiction under 28 U.S.C. § 1331.
Before class certification, named plaintiff Day and all defendants filed a Notice, Consent, and Reference of Civil Action to a Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1) in which they consented to have a United States magistrate judge “conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings.” Plaintiffs counsel signed the consent form on behalf of “Miranda L. Day” only, with no indication Day claimed authority to act on behalf of a putative class. The district judge approved the consent form and submitted the ease to the magistrate judge.
Day subsequently filed an Amended Class Action Complaint on behalf of herself and 10,000 Florida consumers alleging a scheme similar to that in her original Complaint. Day asserted claims against the Law Firm Defendants, CareOne, and Legal Advice Line, LLC (“Legal Advice Line”), which was added as a new defendant, for violations of the Credit Repair Organizations Act and various common law claims.
Approximately three weeks after the Amended Class Action Complaint was filed, Day and the defendants notified the magistrate judge they had “reached an agreement in principle regarding the settlement of this case.” Day subsequently filed a Motion for Preliminary Approval of the Settlement Agreement. Although Day brought the Amended Class Action Complaint on behalf of a putative class of 10,-000 Florida consumers, the proposed Settlement Agreement sought certification of a nationwide class including 125,011 consumers who contracted with Ruther & Associates and Persels & Associates for debt settlement services on or after April 28, 2005. Day did not amend the Amended Class Action Complaint to allege it was being brought on behalf of a nationwide class of 125,011 consumers.
The magistrate judge granted preliminary approval of the proposed Settlement Agreement, conditionally certified the class of 125,011 consumers, appointed Day’s counsel as class counsel, approved the proposed Notice to class, and set the fairness hearing. Pursuant to the approved notice plan, the settlement administrator sent the Notice to the 125,011 class members. The settlement administrator also sent the Notice to the Attorney General of the United States and the Attorney General of every state and territory except Washington, where a separate statewide class action already was pending. The Notice advised class members they could opt out of the class, so they would not be bound by the terms of the proposed Settlement Agreement and would not be precluded from filing or prosecuting any claims they may have on their own behalf. The Notice also advised class members of the procedure for objecting to the proposed Settlement Agreement.
The Notice did not explain that plaintiffs’ class representative Day and the defendants had consented to the magistrate judge’s jurisdiction under § 636(c)(1). The only reference to the magistrate judge was on page six of the seven-page Notice, where it stated “[t]he final approval hearing will be ... before Magistrate Judge Thomas G. Wilson, U.S. District Court for the Middle District of Florida.” Otherwise, the Notice repeatedly referred to “the Court,” except on the final page *1330 where it admonished class members in boldface, capitalized type not to telephone “the judge’s chambers concerning this notice or this case.”
Five class members, including Appellant Raymond Gunn (“Gunn”), filed objections to the proposed Settlement Agreement. In his Objection, Gunn argued the proposed Settlement Agreement was not fair, reasonable, and adequate as required by Rule 23(e)(2) for a variety of reasons. The Attorneys General of Connecticut, Florida, Maine, New York, and West Virginia also submitted an objection letter urging the magistrate judge to reject the proposed Settlement Agreement on the basis it was not fair, reasonable, and adequate, primarily because of the lack of monetary relief to the class members. In their objection, the Attorneys General noted they were speaking on behalf of over 17,000 class members who are residents of their respective states.
After a fairness hearing, the magistrate judge granted final approval of the Settlement Agreement. Gunn now appeals the magistrate judge’s Order granting final approval of the Settlement Agreement, arguing the settlement was not fair, adequate, and reasonable. Two amicus briefs were filed in support of Gunn, one by the National Association of Consumer Advocates (“NACA”) and the other by the States of New York, Arkansas, Florida, Hawaii, Illinois, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New Mexico, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, Tennessee, Vermont, Washington, West Virginia, and the District of Columbia. Like Gunn, the twenty-five Amicus States and the District of Columbia argue the Settlement Agreement was not fair, adequate, and reasonable. For the first time on appeal, NACA raises a new issue regarding whether the magistrate judge had constitutional authority to approve the class action settlement.
II.
A.
In its amicus brief, NACA argues the magistrate judge lacked constitutional authority to approve the Settlement Agreement because the unnamed class members did not consent to the magistrate judge’s exercise of jurisdiction. NACA further argues § 636(c) is unconstitutional as applied to this case because the unnamed class members did not receive constitutionally adequate notice that the named parties had consented to a magistrate judge. Finally, NACA argues § 636(c) is facially unconstitutional because it allows magistrate judges to exercise powers reserved to Article III judges under the Constitution. The question of whether the magistrate judge had jurisdiction to approve the Settlement Agreement was not raised by Day, the defendants, or any objector either below or on appeal.
Generally, the Court will not consider issues raised in an amicus brief “that were neither raised in the district court nor argued by appellants on appeal.” Richardson v. Ala. State Bd. of Educ., 935 F.2d 1240, 1247 (11th Cir.1991). However, “every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,” regardless of whether the parties raise the issue. King v. Cessna Aircraft Co., 505 F.3d 1160, 1170 (11th Cir.2007) (quotation omitted).
The Court’s jurisdiction to review a final judgment entered by a magistrate judge arises from 28 U.S.C. § 636(c)(3). McNab v. J & J Marine, Inc., 240 F.3d 1326, 1327-28 (11th Cir.2001) (per curiam); 28 U.S.C. § 1291; 28 U.S.C. § 636(c)(3) (pro *1331 viding that when the parties properly consent to a magistrate judge, the parties may “appeal directly to the appropriate United States court of appeals from the judgment of the magistrate judge”). A magistrate judge may exercise jurisdiction and enter final judgment under § 636(c)(1) “[u]pon the consent of the parties” and upon special designation by the district court having jurisdiction over the case. Failure of the parties to consent to the magistrate judge’s exercise of jurisdiction deprives this Court of jurisdiction over an appeal from a final judgment entered by a magistrate judge. McNab, 240 F.3d at 1328.
The Court always has jurisdiction to determine its own jurisdiction and that of the lower court in cases it reviews, and “whether the parties consented to the magistrate judge’s jurisdiction to enter final judgment” pursuant to § 636(c) is a jurisdictional question to be considered sua sponte. McNab, 240 F.3d at 1328; Kirkland v. Midland Mortg. Co., 243 F.3d 1277, 1279-80 (11th Cir.2001). Here, if the magistrate judge lacked jurisdiction because the unnamed class members are “parties” who did not consent under § 636(c)(1), then this Court would lack jurisdiction under § 636(c)(3). Consequently, the Court must determine whether the magistrate judge had jurisdiction under § 636(c)(1) even though Appellant Gunn did not raise this issue in his objection below or on appeal.
Consent to a magistrate judge’s jurisdiction under § 636(c)(1) must be “explicit, voluntary, clear, and unambiguous.” McNab, 240 F.3d at 1328. However, such consent “can be inferred from a party’s conduct during litigation.” Roell v. Withrow, 538 U.S. 580, 582, 123 S.Ct. 1696, 155 L.Ed.2d 775 (2003). For example, a party impliedly consents when “the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the ease before the Magistrate Judge.” Id. at 590, 123 S.Ct. 1696; see also Chambless v. Louisiana-Pac. Corp., 481 F.3d 1345, 1350 (11th Cir.2007).
“[Pjarties added to a case after the original litigants have filed a consent under § 636(c) must also agree to the submission of the case to the magistrate judge; if they do not, then the case must be returned to a district judge.” Williams v. Gen. Elec. Capital Auto Lease, Inc., 159 F.3d 266, 268-69 (7th Cir.1998); see also N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc., 996 F.2d 21, 24-25 (2d Cir.1993) (requiring intervenors’ express consent to the magistrate judge’s jurisdiction); Caprera v. Jacobs, 790 F.2d 442, 444-45 (5th Cir.1986) (per curiam) (holding that a magistrate judge did not have jurisdiction to enter the order of dismissal because later-added defendants did not expressly consent to the magistrate judge’s jurisdiction); In re Litig. Relating to the Riot of Sept. 22, 1991 at the Maximum Sec. Unit of the Mont. State Prison, No. 94-35710, 1996 WL 205487, at *2 (9th Cir. Apr. 26, 1996) (unpublished) (“Once the additional defendants were added to the action but did not expressly consent to the magistrate judge’s jurisdiction, the magistrate judge lacked jurisdiction over the entire action.”). Thus, if upon class certification unnamed class members become “parties” under § 636(c), then their consent is required for the magistrate judge’s jurisdiction over the case.
Congress did not define the term “parties” for § 636(c)(1) purposes. When Congress leaves a term in a statute undefined, “we must give it its ordinary meaning, keeping in mind the context of the statute.” United States v. Jimenez, 705 F.3d 1305, 1308 (11th Cir.2013) (quotation omitted). “We assume that Congress used the words in a statute as they are commonly and ordinarily understood, and if the statu *1332 tory language is clear, no further inquiry is appropriate.” Fed. Reserve Bank of Atlanta v. Thomas, 220 F.3d 1235, 1239 (11th Cir.2000). If the statutory language is ambiguous, the Court may examine extrinsic materials and employ canons of construction to determine Congress’s intent. Garcia v. Vanguard Car Rental USA, Inc., 540 F.3d 1242, 1246-47 (11th Cir.2008) (canons of construction); Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1167 (11th Cir.2003) (extrinsic materials).
The term “parties” in § 636(c)(1) is ambiguous because it is not clear whether unnamed class members are included in that term once a class is certified. I therefore turn to extrinsic sources and canons of construction to determine whether, upon certification, unnamed class members become “parties” whose consent is required for a magistrate judge to exercise jurisdiction under § 636(c)(1).
Congress added the relevant language of § 636(c)(1) in 1979. See Act of Oct. 10, 1979, Pub.L. No. 96-82, § 2, 93 Stat. 643 (1979). Looking to extrinsic sources of what Congress may have understood “parties” to mean in 1979, the fifth edition of Black’s Law Dictionary, published the same year, explained that “[a] ‘party’ to an action is a person whose name is designated on record as plaintiff or defendant.” Black’s Law Dictionary 1010 (5th ed.1979). Black’s Law Dictionary also states that the term party “[i]n general, means one having right to control proceedings, to make defense, to adduce and cross-examine witnesses, and to appeal from judgment,” and that party “refers to those by or against whom a legal suit is brought.” Id. Although a class action is brought and controlled by the named class representatives, unnamed class members are “those by or against whom legal suit is brought” once a class is certified. Thus, unnamed class members arguably would fall within Black’s Law Dictionary’s definition of “parties.” The Restatement (First) of Judgments, however, explained that “[a] class action is an illustration of a situation where it is not feasible for all persons whose interests may be affected by an action to be made parties to it,” and that the named plaintiff must “purport to act on behalf of all,” suggesting that unnamed class members are not “parties.” Restatement (First) of Judgments § 86, cmt. b (1942).
Although secondary sources such as dictionaries and Restatements provide some guidance, given the rule of statutory construction that Congress is presumed to know the law, including judicial interpretations of that law, when it legislates, pre-1979 cases are stronger indicia of whom or what Congress may have considered to be a “party” in 1979. See Cannon v. Univ. of Chicago, 441 U.S. 677, 696-98, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). In 1974—five years before Congress added the relevant language to § 636(c)(1)—the Supreme Court held that unnamed class members are “parties” in the sense that filing a lawsuit on behalf of the class tolls the statute of limitations for their claims. Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 550-51, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (stating that unnamed class members “stood as parties to the suit” for tolling purposes unless and until they opted out); cf. In re Cement Antitrust Litig., 688 F.2d 1297, 1310 (9th Cir.1982) (holding that unnamed class members are included in the term “party” under 28 U.S.C. § 455, a judicial recusal statute amended by Congress in 1974).
Moreover, before the enactment of § 636(c)(1), two circuits and several district courts concluded that unnamed class members may be subject to the “party” discovery rules of the Federal Rules of Civil Procedure. See, e.g., Dellums v. Powell, 566 F.2d 167, 187 (D.C.Cir.1977) (stating “[w]hile it is true that discovery *1333 against absentee class members under Rules 33 and 34 cannot be had as a matter of course, the overwhelming majority of courts which have considered the scope of discovery against absentees have concluded that such discovery is available” under certain circumstances and listing cases); Brennan v. Midwestern United Life Ins. Co., 450 F.2d 999, 1004-05 (7th Cir.1971) (holding unnamed class members are “parties” subject to the “ ‘party’ discovery procedures provided by Rules 33 and 34,” although it should not be routine to subject unnamed class members to discovery). But see Wainwright v. Kraftco Corp., 54 F.R.D. 532, 533-34 (N.D.Ga.1972) (holding that party discovery rules did not apply to unnamed class members); Fischer v. Wolfinbarger, 55 F.R.D. 129, 132 (W.D.Ky. 1971) (same). Although discovery on unnamed class members is circumscribed, it is not because they are not “parties.” It is because unnamed class members normally “[have] no duty to actually engage in the prosecution of the action,” and because discovery on unnamed class members may be misused “as a tactic to take undue advantage of the class members or as a stratagem to reduce the number of claimants.” Brennan, 450 F.2d at 1005. Allowing unfettered discovery of unnamed class members also may undermine the efficiency goals of class action litigation. If unnamed class members are not “parties,” it is unclear why courts would apply Rules 33 and 34 when parties seek to propound discovery on unnamed class members as opposed to applying non-party discovery rules. The Seventh Circuit in Brennan specifically rejected the argument that “absent class members are not ‘parties’ to a suit and consequently not subject to the ‘party’ discovery procedures provided by Rules 33 and 34.” Id. at 1004-05.
Following the enactment of § 636(c)(1) in 1979, case law building on American Pipe also recognizes that unnamed class members “may be parties for some purposes and not for others. The label ‘party’ does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context.” Devlin v. Scardelletti, 536 U.S. 1, 9-10, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002). For instance, unnamed class members are “parties” in the sense that filing an action on behalf of the class tolls statutes of limitations against the class and that unnamed class members who have objected to approval of a class action settlement may appeal without intervening, but unnamed class members are not “parties” for the purpose of diversity jurisdiction. Id. at 10, 14, 122 S.Ct. 2005 (citing Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)). In Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), the Supreme Court also indicated that unnamed class members may be “parties” in some circumstances because it states that they “are almost never subject to counterclaims or cross-claims, or liability for fees or costs.” If unnamed class members are not “parties,” it is unclear how they ever could be subject to counterclaims, cross-claims, or liability for fees or costs. See also Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 354, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (stating that a putative unnamed class member “clearly would have been a party in Pendleton if that suit had been permitted to continue as a class action”). Thus, Devlin, Shutts, and Crown are consistent with American Pipe and other pre-1979 case law holding that unnamed class members can be “parties” in some circumstances.
Given the pre-1979 authority finding that unnamed class members may be “parties” in various circumstances, Congress presumably was aware that the term “parties” could include unnamed class members if left open to judicial interpretation. Congress could have explicitly excluded *1334 unnamed class members if that was its intent, but it did not do so.
It is “settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question.” Gomez v. United States, 490 U.S. 858, 864, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989); see also Zadvydas v. Davis, 533 U.S. 678, 689, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (stating “[i]t is a cardinal principle of statutory interpretation ... that when an Act of Congress raises a serious doubt as to its constitutionality, this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.” (quotations omitted)). If unnamed class members are not “parties” with a right to consent individually under § 636(c)(1) after certification, then they would be bound by the named plaintiffs relinquishment of their rights to an Article III judge, which raises constitutional concerns regarding whether a magistrate judge properly may exercise jurisdiction under § 636(c)(1) without the consent of the unnamed class members. Construing the statute to find that unnamed class members are “parties” is a reasonable alternative interpretation in light of the pre~1979 case law, and avoids a constitutional question.
Additionally, courts construe statutory grants of power strictly. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); Healy v. Ratta, 292 U.S. 263, 269-70, 54 S.Ct. 700, 78 L.Ed. 1248 (1934). Given the Article III concerns present here, strict construction is particularly appropriate. In this context, the magistrate judge is acting in essence as an Article III judge under § 636(c), not as a magistrate judge making non-dispositive rulings or a report and recommendation concerning a dispositive matter under § 636(b). As discussed above, whether the parties have properly consented to a magistrate judge is a jurisdictional issue because the parties’ consent is required to trigger a magistrate judge’s jurisdiction to finally adjudicate a civil case in accord with § 636(c). Indeed, “[t]he unanimous and voluntary consent of the parties is the constitutional linchpin of this power.” Williams v. Gen. Elec. Capital Auto Lease, Inc., 159 F.3d 266, 268 (7th Cir.1998) (quotation omitted). Also, it is through consent that magistrate judges derive their statutory authority under § 636(c)(1) to dispositively adjudicate unnamed class members’ claims. See N.Y. Chinese TV Programs, 996 F.2d at 24 (stating that “the consent of each party is essential to the validity of the statutory system that allows a magistrate judge to make binding adjudications”). I therefore would hold that upon certification, unnamed class members become “parties” tyho must consent to a magistrate judge’s jurisdiction under § 636(c)(1).
This construction does not preclude a district judge from referring matters to a magistrate judge in class actions in accord with § eseibXIXAMB).[1] Construing the *1335 term “parties” to include unnamed class members may make it somewhat burdensome for the court to mail a copy of proposed findings of fact and recommendations under § 636(b)(1)(B) “to all parties” as required by § 636(b)(1)(C). See Barber v. Thomas, 560 U.S. 474, 130 S.Ct. 2499, 2506, 177 L.Ed.2d 1 (2010) (stating there is a “presumption that a given term is used to mean the same thing throughout a statute”) (quotation omitted). However, the impact on the utilization of magistrate judges will be minimal.
First, it still may be practicable for the clerk’s office to notify unnamed class members in small class actions. Second, it is unclear whether the burden of notifying the unnamed class members of a report and recommendation is great enough to find Congress did not intend for unnamed class members to be “parties.” The requirement that the court notify all unnamed class members does not apply to non-dispositive pretrial matters decided by the magistrate judge under § 636(b)(1)(A). Rather, it applies only to reports and recommendations under § 636(b)(1)(B), which generally are case dispositive matters customarily committed to an Article III district judge.[2]
Finally, even if construing “parties” to include unnamed class members would result in some large class actions not being referred to magistrate judges under § 636(c), the impact on the overall utilization of magistrate judges would be minimal. Statistics published annually by the Administrative Office of the United States Courts show that for the twelve month period ending September 30, 2012, magistrate judges disposed of 1,068,153 matters, including 264,981 matters in civil cases.[3] During that period, magistrate judges concluded with finality 15,049 civil cases pursuant to consent jurisdiction, including 360 civil jury trials and 139 civil nonjury trials. It is not reported how many class actions were included in the total number of civil cases concluded by magistrate judges on consent of the parties under § 636(c), but given the relatively small number of class actions comprising the civil caseload of the United States District Courts overall, the number presumably is small.
To the extent this construction of “parties” burdens the court and the manner in which magistrate judges are utilized with respect to class action cases, any such burden must be weighed against the constitutional and statutory limits of magistrate judges’ power to dispositively adjudicate unnamed class members’ claims. Due to the prerequisite Congress imposed to permit magistrate judges to act as Article III judges only with the parties’ consent under § 636(c), large class actions may not be among the types of cases which realistically may proceed before a magistrate judge under § 636(c).
The Supreme Court has indicated that the decision whether unnamed class members are “parties” should be made in reference to the goals of class action litigation. See Devlin, 536 U.S. at 10, 122 S.Ct. 2005. But having a magistrate judge finally adjudicate class actions is not a goal of class action litigation. To the extent magistrate judges’ resolution of class actions promotes efficiency, efficiency is not the only goal of class action litigation, particularly in light *1336 of the unnamed class members’ right to have their claims adjudicated by an Article III decision maker as well as the court’s fiduciary responsibility to unnamed class members. See Holmes v. Cont’l Can Co., 706 F.2d 1144, 1147 (11th Cir.1983) (“[Cjareful scrutiny by the court is necessary to guard against settlements that may benefit the class representatives or their attorneys at the expense of absent class members.” (quotation omitted)); Synfuel Techs., Inc. v. DHL Express (USA), Inc., 463 F.3d 646, 652-53 (7th Cir.2006) (stating the district court’s role in reviewing a settlement agreement is “akin to the high duty of care that the law requires of fiduciaries.” (quotation omitted)). When considering the scope of magistrate judges’ power under § 636(c), practical efficiency concerns are less important than constitutional and statutory considerations.
Moreover, what was “most important” to Devlin’s holding that unnamed class members are “parties” for the purposes of appeal was that, without the right to appeal approval of a class action settlement, unnamed class members would be bound by a settlement to which they did not agree. 536 U.S. at 10-11, 122 S.Ct. 2005. Here, without the right to individually consent to a magistrate judge under § 636(c), 125,011 unnamed class members would be bound by Day’s relinquishment of their rights to an Article III judge which they did not know about, much less expressly or impliedly consent to. This is particularly troubling because the Notice the unnamed class members received did not explain that Day and the defendants had consented to the magistrate judge’s jurisdiction under § 636(c)(1), and the only mention of the magistrate judge was buried on page six of the seven-page Notice. Additionally, unnamed class members would be bound by a final adjudication of their claims by a magistrate judge without their consent.[4]
In holding that unnamed class members are “parties” upon certification who must consent to a magistrate judge’s jurisdiction under § 636(c), I would depart from the Third and Seventh Circuits. Both have held that “unnamed class members are not ‘parties’ within the meaning of § 636(c)(1), and that their consent is not required for the magistrate judge to exercise jurisdiction over a case.” Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 181 (3d Cir.2012); see also Williams, 159 F.3d at 269-70. The Third and Seventh Circuits reasoned that the unnamed class members’ consent is not necessary under § 636(c) because “[generally speaking, absent class members are not ‘parties’ before the court in the sense of being able to direct the litigation.” Williams, 159 F.3d at 269. Rather, the named plaintiff “is the ‘party’ to the lawsuit who acts on behalf of the entire class, including with regard to the decision to proceed before a magistrate judge. This is an inherent part of representational litigation.” Id.
The holding in Dewey and Williams that unnamed class members are not “parties” whose consent is necessary for a magistrate judge to exercise jurisdiction is at odds with Williams’s acknowledgement that consent is the constitutional “linchpin” of the magistrate judge’s authority under § 636(c)(1). 159 F.3d at 268. As discussed above, magistrate judges derive both statutory and constitutional authority to adjudicate later-added parties’ claims only through consent. Thus, a class repre *1337 sentative’s pre-certification consent to a magistrate judge that purports to bind the unnamed class members upon certification has greater import than a tactical litigation decision that is an “inherent part of representational litigation.” Id. at 269. Instead, consent is the constitutional and statutory source of the magistrate judge’s power to in essence sit as an Article III judge and dispositively adjudicate the unnamed class members’ claims.
Moreover, the options set forth in Williams and Shutts for unnamed class members to avoid being bound by a named class representative’s pre-certification consent to a magistrate judge are not realistic alternatives. The Seventh Circuit suggested that if unnamed class members prefer an Article III judge, they may move to intervene under Federal Rule of Civil Procedure 24(a) to “become a party to the lawsuit, and then exercise her right to withhold her consent to proceed before the magistrate.” Williams, 159 F.3d at 269. The Seventh Circuit alternatively suggested that “after the entry of final judgment, the unnamed class member can raise a collateral attack based on due process against the named representative’s decision to consent under § 636(c).” Id. Another option from Shutts is that an unnamed class member may opt out of the settlement and not be bound by the judgment entered by a non-Article III judge. See Shutts, 472 U.S. at 812, 105 S.Ct. 2965. However, these three options are illusory if the unnamed class members are not aware of their right to an Article III judge. For instance, in this case, it is unclear how the unnamed class members intelligently could have exercised their right to opt-out because the Notice did not inform them of their right to an Article III judge, that Day had purported to relinquish that right, and that class members could exercise any of the three options if they wished to preserve their right to an Article III judge.
At the time the Seventh Circuit authored Williams, it did not have the benefit of two recent United States Supreme Court cases, Standard Fire Insurance Company v. Knowles, — U.S.-, 133 S.Ct. 1345, 185 L.Ed.2d 439 (2013), and Smith v. Bayer Corporation, — U.S. --, 131 S.Ct. 2368, 180 L.Ed.2d 341 (2011). In Standard Fire, the Supreme Court held that a pre-certification stipulation regarding the amount of damages the class would seek did not bind members of the proposed class. 133 S.Ct. at 1348-49. “That is because a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified.” Id. at 1349. In Smith, the Supreme Court held that when a party seeks class certification but fails to obtain it, an unnamed class member from the proposed class is not precluded from seeking to certify the class in another case, as “[njeither a proposed class action nor a rejected class action may bind nonparties.” 131 S.Ct. at 2379-80. Although Smith predates Dewey, the Third Circuit does not cite Smith, so it is unclear whether the Dewey Court took Smith’s holding into account when it held that unnamed class members’ consent is not required for the magistrate judge to exercise jurisdiction. Regardless, neither the Third Circuit nor the Seventh Circuit had the guidance of Standard Fire.[5]
*1338 Under Standard Fire and Smith, some pre-certification decisions by named class representatives cannot bind putative unnamed class members. Given that magistrate judges derive both constitutional and statutory authority to adjudicate later-added parties’ claims only through consent, consent under § 636(c) is not the type of pre-certification litigation decision named class representatives may make that would bind unnamed class members upon certification. Rather, upon certification, unnamed class members become later-added “parties” whose consent is required to allow the magistrate judge to exercise jurisdiction over the dispositive resolution of the case.
The Seventh Circuit expressed the concern that treating unnamed class members as “parties” whose consent is required “would virtually eliminate § 636(c) referrals to magistrate judges in all potential class actions, because it would de facto transform all such cases into ‘opt-in’ style actions and fundamentally change the capacity of the judgment ... to bind both sides in the absence of express consents.” Williams, 159 F.3d at 269. I disagree the impact would be so extreme. The practical effect would be that the district judge will decide class actions unless the parties consent as required by applicable law to give the magistrate judge jurisdiction. And, as previously discussed, holding that unnamed class members become “parties” under § 636(c)(1) upon certification has minimal impact on the utilization of magistrate judges. Rather than doing violence to the utilization of magistrate judges, requiring adequate notice and the parties’ express or implied consent to a magistrate judge’s jurisdiction ensures proper adherence to the legal requirements Congress imposed on non-Article III magistrate judges, thereby preserving the legitimacy of the magistrate judge system and protecting litigants’ rights and the integrity of the federal courts.
B.
Here, Day did not have the authority to consent to a magistrate judge on behalf of the unnamed class members before class certification. Following conditional class certification, Day consented to the magistrate judge on her own behalf through her litigation conduct by voluntarily appearing before the magistrate judge at the fairness hearing. See Roell, 538 U.S. at 590, 123 S.Ct. 1696. Of the 125,011 class members, Day was the only non-objecting class member to appear personally or through counsel. However, Day’s post-certification implied consent to the magistrate judge did not bind the unnamed class members because, upon certification, unnamed class members become later-added “parties” whose consent is required under § 636(c)(1).
The unnamed class members did not independently satisfy § 636(c)(l)’s consent requirement. The unnamed class members did not expressly consent to the magistrate judge’s jurisdiction. The unnamed class members also did not impliedly consent to the magistrate judge’s jurisdiction through their litigation conduct, i.e., by not objecting to the magistrate judge’s jurisdiction. The Notice did not explain that Day and the defendants had consented to a magistrate judge to preside over the proceedings, and the only reference to “magistrate judge” was on the second-to-last page of the Notice, where it stated “[t]he final approval hearing will be ... before Magistrate Judge Thomas G. Wilson.” Otherwise, the Notice repeatedly referred to “the Court,” except on the final page where it admonished class members not to *1339 telephone the judge’s chambers concerning the Notice. The unnamed class members’ failure to object to the magistrate judge’s jurisdiction in the face of the Notice provided is not sufficient to constitute implied consent through litigation conduct. See Roell, 538 U.S. at 590, 123 S.Ct. 1696 (stating that a party impliedly consents to a magistrate judge when “the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge”). Because the unnamed class members are later-added parties whose consent was required, and because the unnamed class members did not consent, the magistrate judge lacked jurisdiction to approve the class action settlement in this case.
III.
I would hold that the unnamed class members became “parties” upon certification whose express or implied consent was required under § 636(c)(1). I further would hold the magistrate judge lacked authority to approve the class action settlement because Day’s post-certification implied consent to the magistrate judge operated only on her own behalf, and the unnamed class members did not satisfy § 636(c)(l)’s consent requirement. Because the requirements of § 636(c)(1) were not satisfied, this Court likewise lacks appellate jurisdiction under § 636(c)(3). I concur in the judgment vacating and remanding for further proceedings.

. Sections 636(c)(l)-(2) would not require notice to unnamed class members until a class is certified, at which point unnamed class members would receive notice under Federal Rule of Civil Procedure 23(c)(2). Thus, including unnamed class members in the term “party” would not result in a greater burden on the courts under §§ 636(c)(l)-(2).

. U.S. Magistrate Judges, http://www.uscourts. gov/Statistics/JudicialBusiness/2012/us-magistrate-judges.aspx (last visited September 4, 2013).

. This would include class members who were never identified as putative class members in any operative complaint in this case. Day brought the Amended Class Action Complaint on behalf of a putative class of 10,000 Florida consumers, and Day never amended her Amended Class Action Complaint to include the nationwide class. Yet her pre-certi-fication consent would bind 115,000 consumers who technically were not even part of the putative class identified in the original or the Amended Class Action Complaint.

. The Seventh Circuit’s holding in Williams has been further eroded by Devlin because Devlin's holding overruled one of the cases on which Williams relies. In reasoning that "absent class members are not 'parties’ before the court in the sense of being able to direct the litigation,” Williams cites In re Brand Name Prescription Drugs Antitrust Litigation, 115 F.3d 456, 458 (7th Cir. 1997), in which the Seventh Circuit held that unnamed class members do not have a right to appeal absent intervention. Williams, 159 F.3d at 269. Because Devlin holds that unnamed class members who object to the proposed *1338 settlement are parties for the purpose of an appeal without having to intervene, Devlin overrules In re Brand Name Prescription Drugs Antitrust Litigation.