BENTON, J.
Both as personal representative of the estate of Daniel Dean Roughton and on her own behalf, Lucy Roughton, Daniel’s widow, asks us to overturn summary final judgment entered against her on grounds the statute of limitations bars wrongful death claims against R.J. Reynolds Tobacco Co., Lorillard Tobacco Company, Philip Morris USA, Inc., Liggett Group LLC, and Vector Group Ltd., Inc. (Tobacco Defendants) on account of Mr. Roughton’s death on May 2, 1997. We reject the contention that the Florida Supreme Court, in deciding Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006), nullified the notice to opt out of the Engle class action she filed in 1997, and affirm.
I.
Filed in 1994 against cigarette compa *1147 nies and tobacco industry organizations,[1] Engle began as a nationwide class action seeking redress for injuries caused by smoking. Id. at 1256. On interlocutory appeal, the Third District approved the trial court’s recognition of a class, but pared the class down by eliminating plaintiffs with no connection to Florida. R.J. Reynolds Tobacco Co. v. Engle, 672 So.2d 39, 42 (Fla. 3d DCA 1996). Thereafter, on November 21, 1996, the Engle trial court entered an Order on Class Notice that provided in part:
1. In RJ Reynolds Tobacco Co. v. Engle, et. al., 672 So.2d 39 (Fla. 3d DCA 1996), rev. den., October 2, 1996, the Third District Court of Appeal of Florida affirmed the Order of October 31, 1994, granting class certification, with the modification that the class be limited to “All Florida Citizens and Residents.” The class was defined by the Third District Court of Appeal of Florida in its January 31, 1996 Decision, as follows:
“All Florida citizens and residents, and their survivors, who have suffered, presently suffer or have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine ...
[[Image here]]
26. Class members shall have one hundred eighty days (six months) from the date of the first notice publication [2] to opt out from the class action.
Some two months after her husband died, Ms. Roughton filed a timely statement on July 7, 1997, asking to be excluded from the Engle class. Her notice to opt out reads as follows:
THE UNDERSIGNED, Lucy A.E. Roughton as Personal Representative of the Estate of Daniel Dean Roughton of [address], requests to be excluded from the class of Plaintiffs in this action as permitted by notice of the Court to class members dated November 21,1996.
DATED: 7-7-97 Lucy A.E. Roughton LUCY A.E. ROUGHTON AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DANIEL DEAN ROUGHTON
See Fla. R. Civ. P. 1.220(d)(2)(A) (requiring that notice be given in class actions that “any member of the class who files a statement with the court by the date specified in the notice asking to be excluded shall be excluded from the class”).
*1148 In February of 1998, after Ms. Rough-ton had opted out of the class, the trial court divided the Engle proceedings into three phases: In Phase I, the jury considered “the issues of liability and entitlement to punitive damages for the class as a whole,” and rendered a verdict against the defendants “on all counts.” Id. at 1256-57. In Phase II, the same jury determined entitlement to and the amount of compensatory damages for the individual class representatives and a punitive damage award for the class as a whole. Id. at 1257. “According to the trial plan, in Phase III, new juries [wejre to decide the individual liability and compensatory damages claims for each class member (estimated to number approximately 700,000).” Id. at 1258.
Before Phase III proceedings began, the Engle defendants appealed the Phase II verdicts. On appeal, the Third District ruled “that the predominance and superiority requirements for class action ha[d] not been met.” Liggett Group, Inc. v. Engle, 853 So.2d 434, 449 (Fla. 3d DCA 2003). On that basis, the Third District concluded the “entire judgment must be reversed,” and remanded with instructions that the class be decertified. Id. at 470.
On further review in the Florida Supreme Court, that court disagreed in no uncertain terms, ruling that “[ijnvalidating the completed class action proceedings on manageability and superiority grounds after a trial has occurred does not accord with common sense or logic.” Engle, 945 So.2d at 1267. Concluding, however, that “continued class action treatment for Phase III of the trial plan is not feasible because individualized issues such as legal causation, comparative fault, and damages predominate,” id. at 1268, the supreme court concluded that the “pragmatic solution [wa]s to now decertify the class, retaining the jury’s Phase I findings other than those on the fraud and intentional infliction of emotional distress claims, which involved highly individualized determinations, and the finding on entitlement to punitive damages questions, which was premature.” Id. at 1269. Our supreme court ruled that “[ijndividual plaintiffs within the class will be permitted to proceed individually with the findings set forth above given res judicata effect in any subsequent trial between individual class members and the defendants, provided such action is filed within one year of the mandate in this case.” Id. at 1277 (emphasis supplied).
On October 30, 2007, Ms. Roughton filed a complaint on behalf of the estate and herself individually against the Tobacco Defendants in the First Circuit.[3] The Tobacco Defendants moved for summary judgment, arguing that the Engle decision setting the deadline for filing individual actions was not applicable because Ms. Roughton had opted out of the Engle class nine years earlier and the limitations period had expired years before she filed her complaint. The trial court agreed, pointing out that Ms. Roughton had taken no steps to rejoin the Engle class action, after filing her notice to opt out of the class, and that suit was not filed until after the statute of limitations had run. On this ground, the trial court entered the final summary judgment in favor of the Tobacco Defendants that gave rise to the present appeal.
II.
Ms. Roughton argues the opt-out notice she filed in 1997 was “superseded” or “nullified” by the supreme court’s Engle *1149 decision in 2006. She asserts that the supreme court, in prospectively decertify-ing the class, “entirely recreated the nature of the Engle class” and “allowed all survivors to proceed with individual lawsuits utilizing the Engle findings as res judicata on an ‘opt in’ basis.” She relies almost entirely on the statement in the supreme court’s Engle opinion that “[t]he class consists of all Florida residents fitting the class description as of the trial court’s order dated November 21, 1996.” Id. at 1277.
But in this sentence the supreme court was addressing the appropriate “cut-off date for class membership” only in order to resolve whether the Engle class representatives were “properly included within the class as certified.” Id. at 1274-75. The supreme court rejected the Third District’s view that the appropriate cut-off date for class membership was October 31, 1994, the date the “nationwide” class was initially certified:
The plain language of the class certification indicates that the trial court anticipated that the class would be cut off or limited to the date of final certification. The phrase “who have suffered, presently suffer or have died” supports the view that the class should include only those people who were affected in the past or who were presently suffering at the time the class was recertified by the trial court. Moreover, although not controlling, federal case law supports the interpretation that the date of final class certification should be presumed the proper cut-off date for class membership.
In our view, it is reasonable to conclude that the cut-off date for class membership is November[ ] 21,1996, the date the trial court recertified the class and issued an amended order conforming the class description to the Third District’s decision. It was with this November 21, 1996, order that the circuit court first ordered that notice to potential class members be published in newspapers and magazines circulated in Florida.
Id. at 1275 (citations omitted). Ms. Roughton’s focus on a single statement at the conclusion of the court’s opinion, merely summarizing the earlier analysis of the appropriate “cut-off date for class membership,” ignores the context in which the court analyzed “class membership.” Id. at 1275. See, e.g., Bishop ex rel. Estate of Ramsay v. R.J. Reynolds Tobacco Co., 96 So.3d 464, 466-68 (Fla. 5th DCA 2012) (“In its opinion, the court held that November 21, 1996, the date that the trial court issued its class recertification, order, was the cut-off date for Engle class inclusion.... Engle III clearly holds that November 21, 1996, is a cut-off date for class inclusion and nothing more.”).
The supreme court’s Engle opinion does not address the effect of the decision on former class members who had opted out of the class.[4] Nothing in the text of the opinion implies that the supreme court intended that former class members who timely opted out of the class but did not then file individual suits could initiate individual actions after the statute of limitations had run.[5]
*1150 Once the statute of limitations ran on a former class member’s individual claim, the claim was forever barred. See, e.g., Wood v. Eli Lilly & Co., 701 So.2d 344, 346 (Fla.1997) (“[T]his Court has held that once a claim is extinguished by the statute of limitations, it cannot be revived as a result of a subsequent court decision. In re Estate of Smith, 685 So.2d 1206, 1210 (Fla.[1997])”); Wiley v. Roof, 641 So.2d 66, 68 (Fla.1994) (“Regardless of whether the statute of limitations pertains to a right or a remedy, retroactively applying a new statute of limitations robs both plaintiffs and defendants of the reliability and predictability of the law.... The law does not prioritize rights over remedies. Once the defense of the statute of limitations has accrued, it is protected as a property interest just as the plaintiffs right to commence an action is a valid and protected property interest.... Florida’s statute of limitations, section 95.011, bars all action unless commenced within designated times. Once barred, the legislature cannot subsequently declare that ‘we change our mind on this type of claim’ and then resurrect it. Once an action is barred, a property right to be free from a claim has accrued.’ ”).
The Engle court’s decision to approve prior class treatment for liability, but prospectively decertify the class and allow class members to initiate individual damages actions, was not without precedent. See Engle, 945 So.2d at 1268 (citing Olden v. LaFarge Corp., 383 F.3d 495, 509 (6th Cir.2004); Carnegie v. Household Int’l, Inc., 376 F.3d 656, 661 (7th Cir.2004); Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir.1996)). Despite this, Ms. Roughton has cited no decision from any jurisdiction, and there is none that we are aware of, where the decision to decer-tify a class prospectively and permit class members to pursue individual actions for damages, after a determination of liability, was held to abrogate the statute of limitations and re-open the class to those who had previously opted out.
III.
“By statute, the personal representative is the only party with standing to bring a wrongful death action to recover damages for the benefit of the decedent’s survivors and the estate. The survivors may not bring separate legal actions.” Wagner, Vaughan, McLaughlin & Brennan, P.A. v. Kennedy Law Group, 64 So.3d 1187, 1191 (Fla.2011) (citations omitted). See also Kadlecik v. Haim, 79 So.3d 892, 893 (Fla. 5th DCA 2012) (“Under Florida’s Wrongful Death Act, ... [t]he personal representative has the exclusive authority to conduct litigation and settle all claims. The survivors are not parties to the wrongful death litigation, even when the claims are brought for their benefit.”) (citations omitted); Thompson v. Hodson, 825 So.2d 941, 949, 953 (Fla. 1st DCA 2002) (“The personal representative has statutory responsibility to settle a wrong *1151 ful death action.... A survivor does not have actual veto power over the personal representative’s settlement decision. Instead, if the survivor objects to amount or apportionment, the authority of the court may be invoked.”); Jones v. Zagrodnik, 600 So.2d 1265, 1266 (Fla. 5th DCA 1992) (holding that valid release of rights by the personal representative of the estate released the rights of the decedent’s after-born child, born after the release, as well as other survivors of the decedent).
Ms. Roughton argues that her opt-out notice was ineffective because she had not been formally appointed personal representative of her husband’s estate at the time she signed and filed the notice to opt out: The probate court did not appoint Ms. Roughton as personal representative of the estate until November of 2007 (after the date the complaint at issue was filed). But on this point section 733.601, Florida Statutes (1997), controls:
The duties and powers of a personal representative commence upon his or. her appointment. The powers of a personal representative relate back in time to give acts by the person appointed, occurring before appointment and beneficial to the estate, the same effect as those occurring thereafter.
This statutory provision had not changed either by the time the complaint was filed or by the time Ms. Roughton was appointed personal representative.[6] The Comment to Uniform Probate Code § 3-701, which contains identical substantive language, states: “This section codifies the doctrine that the authority of a personal representative relates back to death from the moment it arises.”
Ms. Roughton maintains the Tobacco Defendants “cited no authority that opting out of a case and letting the statute of limitations run is in any way ‘beneficial’ within the meaning of Section 733.601,” and that her subsequent appointment “does not relate back to this non-beneficial and repudiated act.” But the statutory requirement that the act be “beneficial to the estate” was not intended to let a de facto personal representative disavow her actions simply because later events made it seem desirable to do so. The relevant question is whether the personal representative could have reasonably believed that opting out of the Engle class action was beneficial to the estate at the time the opt-out notice was filed. See, e.g., Estate of Wesolowski v. Indus. Comm’n of Arizona, 192 Ariz. 326, 965 P.2d 60, 64 (1998) (noting the contract, signed before appointment as personal representative was “clearly intended at the time of signing to benefit the estate” and therefore bound the estate). Opting out did not itself cause the statute of limitations to run on the wrongful death action, moreover. The failure to file a timely, separate wrongful death action after opting out caused the problem.[7]
*1152 We also reject Ms. Roughton’s argument that, even if she acted for the benefit of the estate when filing the opt-out notice, she had no power to “opt out any individual survivor’s claim” and that any notice filed by the estate on behalf of the survivors should reflect that the individual survivors voluntarily and knowingly relinquished their individual rights. Florida’s Wrongful Death Act provides that the “action shall be brought by the decedent’s personal representative, who shall recover for the benefit of the decedent’s survivors and estate all damages, as specified in this act, caused by the injury resulting in death.” § 768.20, Fla. Stat. (1997). The Act “eliminates the multiplicity of suits that resulted from each survivor bringing an independent action and avoids survivors racing to get the first judgment.” Wagner, Vaughan, McLaughlin & Brennan, P.A., 64 So.3d at 1191.
IV.
Finally, we reject Ms. Roughton’s argument that the opt-out notice was “invalid” because the Engle trial court did not enter an order acknowledging the notices individually and listing the names of every person or entity that opted out of the class. Florida Rule of Civil Procedure 1.220(d)(2) requires that “notice shall inform each member of the class that (A) any member of the class who files a statement with the court by the date specified in the notice asking to be excluded shall be excluded from the class, (B) the judgment, whether favorable or not, will include all members who do not request exclusion. ...” The Committee Notes to Rule 1.220 state that the “rule is based on Federal Rule of Civil Procedure 23, but a number of changes have been made to eliminate problems in the federal rule through court decisions. Generally, the rule provides for ... notice to all members of the class, provisions for the members of the class to exclude themselves.... ” The notice issued by the Engle trial court stated the “judgment(s) in this Cause shall be binding on all class members unless you advise the Court in writing ... that you wish to be excluded,” and that “[i]f you exclude yourself from the Engle class action by the postmarked deadline, you will not be bound by the class judgment(s).”[8] Both the rule and the published notice make clear that no order allowing a class member to opt out was required. Ms. *1153 Roughton’s notice to opt out was effective upon filing.
Affirmed.
VAN NORTWICK and PADOVANO, JJ., concur.

. The named defendants in the instant case were all parties to the Florida Supreme Court’s decision in Engle v. Liggett Group, Inc., 945 So.2d 1246, 1256 n. 3 (Fla.2006), with the exception of Vector Group Ltd., Inc. Ms. Roughton alleged in her complaint that a "sham reorganization established Vector as the parent of ... Liggett.” In its answer, Vector Group denied that either it or any of its predecessors was a defendant in Engle.

. The legal notice approved for publication provided:
4. If you wish to remain a member of the Engle Class you do not have to do anything at this time. The lawsuit will be prosecuted on your behalf by the representative Plaintiffs and Class Counsel....
5. If you wish to be excluded from the class, you must express your desire for exclusion in writing, signed by you and postmarked no later than July 15, 1997. The judgment(s) in this Cause shall be binding on all class members unless you advise the Court in writing and signed by you that you wish to be excluded.... If you exclude yourself from the Engle class action by the postmarked deadline, you will not be bound by the class judgment(s), you will not share in any class recovery and you may pursue any individual claim you have through private counsel at your own expense.

. The complaint asserted the action was brought pursuant to Florida’s Wrongful Death Act, sections 768.16-768.27, Florida Statutes (1997), in accordance with Engle.

. The court specifically addressed the statute of limitations only when determining that the claims of one of the class representatives was barred because the jury found he knew or should have known, more than four years before the class action was filed, that he was addicted to smoking and that his cancer could have been caused by smoking. See id. at 1276; Liggett Group Inc. v. Engle, 853 So.2d 434, 453-54 n. 23 (Fla. 3d DCA 2003).

. Properly understood, the opinion indicates the decision applies only to plaintiffs who had remained class members during Phase I and *1150 Phase II. The court explained that the doctrine of res judicata applies when there is a " 'judgment on the merits rendered in a former suit between the same parties or their privies,’ " stated that "[¡Invalidating the completed class action proceedings on manageability and superiority grounds after a trial has occurred does not accord with common sense or logic,” determined the "pragmatic solution [wa]s to now decertify the class, retaining the jury’s Phase I findings other than those ... which involved highly individualized determinations,” and held that "the Phase I common core findings we approved above will have res judicata effect in” individual damages actions initiated by class members. Engle, 945 So.2d at 1259, 1267, 1269 (citation omitted). Potential class members who filed timely notices to opt out of the class action would not logically fall within the group of plaintiffs entitled to rely on the res judicata effect of the Phase I jury findings.

. Section 733.601, Florida Statutes (2007), provided in part:
The duties and powers of a personal representative commence upon appointment. The powers of a personal representative relate back in time to give acts by the person appointed, occurring before appointment and beneficial to the estate, the same effect as those occurring after appointment.

. Ms. Roughton's argument that it was not beneficial to the estate to opt out of the class action at the time she did so rings hollow in light of arguments she makes that the supreme court’s decision in Engle nullified all prior notices to opt out of the class action: She argued that the "originally structured litigation looked much like the type of class action that one might choose to opt out from — a large, difficult to manage class that risked small payments to class members, with very little representation of individual con-cems. The newly structured class provided each plaintiff with the opportunity to prove *1152 his or her individual damages before a jury, with an attorney of his or her choosing, and also provided that issues of causation, comparative fault and punitive damages would be decided on an individual basis. This was an entirely different case — -and many of the original plaintiffs who had filed opt outs would never have opted out given these circumstances.”
Under the Engle trial court's plan, issued on February 4, 1998, trial proceedings were divided into three phases. "According to the trial plan, in Phase III, new juries [wejre to decide the individual liability and compensatory damages claims for each class member. ... Thereafter, the plan contemplated that the trial court would divide the punitive damages previously determined equally among any successful class members.” Engle, 945 So.2d at 1258. Despite the trial court order establishing individual juries for compensatory damages claims, Ms. Roughton did not file a motion to re-enter the class. Others did, and the Engle trial court entered orders granting such motions at least as late as May 12, 1999.

. On November 17, 1999, the Engle trial court did enter an "Order on Adequacy of Class Notice,” which concluded that "any person to whom the class definition applies who did not properly opt-out of the class in a timely fashion, i.e., by July 15, 1997, is a member of the Engle class.” The parties also note that the Engle trial court subsequently ruled on motions to re-admit some who had previously opted out of the class action by the July 15, 1997 deadline, indicating the trial court determined the notices to opt out were effective without court order.